**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| JOSHUA BARLOW, | * | |
| Petitioner, | * | |
| v. | * | Civil Action No. PX-23-3013 |
| PAIGE C. JONES, et al., | * | |
| Respondents. | * | |

***

**MEMORANDUM OPINION**

Joshua Barlow brings this habeas corpus Petition pursuant to 28 U.S.C. § 2254, in which he challenges his state court murder conviction. ECF No. 1. The Petition is ready for resolution and no hearing is necessary. *See* Loc. R. 105.6; *see also* Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts*; *Fisher v. Lee*, 215 F.3d 438, 455 (4th Cir. 2000). For the following reasons, the Court denies the Petition and declines to issue a certificate of appealability.

## I. Background

### A. Trial and Guilty Plea

On June 12, 2012, Barlow was indicted in the Circuit Court for Prince George's County for first-degree murder and related crimes. ECF No. 9-1 at 16, 18. Barlow was tried by jury in October of 2013, and convicted on all counts. ECF Nos. 9-4, 9-5, 9-5, 9-6, 9-7. The Circuit Court sentenced Barlow to life imprisonment without the possibility of parole. ECF No. 9-8 at 20-21.

On April 23, 2015, the Appellate Court of Maryland vacated the conviction, concluding the trial court erred in the manner it reached Barlow's request to fire court-appointed counsel. ECF No. 9-1 at 120-142. On remand, Barlow decided to forgo retrial and plead guilty to one count of first-degree murder. ECF No. 9-10. As part of his guilty plea, Barlow agreed to facts that could

be proven with evidence beyond a reasonable doubt, recited by the Assistant State's Attorney as follows:

> [O]n or about April 18th, 2012, at approximately two p.m., maintenance men located the body of a female, later identified as Latoya Hall, in a vacant apartment located at 4000 28th Avenue, Apartment Number 301, in Temple Hills, Prince George's County, Maryland. Ms. Hall was located inside of a closed closet. Her arms were bound behind her back with a black shoestring, her feet were bound together with black electrical tape, and her mouth was gagged with a white tube sock. Ms. Hall was partially undressed, and her body was covered in an unknown white powder.
>
> The maintenance men then called police who responded to the scene. Police collected evidence and Ms. Hall's body was transported to the Office of the Chief Medical Examiner where Dr. King conducted an autopsy and ruled that the cause of Ms. Hall's death was asphyxiation, and the manner of death was homicide. Police were able to obtain Ms. Hall's identity using a fingerprint scan because no other property belonging to Ms. Hall was found on her body.
>
> Police learned in the course of their investigation that Ms. Hall met with an individual on April the 14th of 2012. Police learned this by obtaining text messages from her cellular phone provider. In those messages, Ms. Hall agreed to meet an individual at the location where she was found. Police then obtained cell phone records associated with the phone number that had been communicating with Ms. Hall and based on those records and conversations that were contained therein, police ultimately identified the defendant, Joshua Barlow, who's seated to my left wearing an orange jumpsuit, as a possible suspect.
>
> In conducting their investigation, police learned as well that Mr. Barlow had pawned a necklace on April the 15th of 2012. Ms. Hall's ex-husband was able to identify that necklace as belonging to Ms. Hall. The defendant was charged and arrested. He waived his rights and agreed to speak with police. He admitted to texting and meeting with the victim. He further admitted to pawning the necklace; however, he indicated that he did not murder Ms. Hall. Police observed scratches on Mr. Barlow's arm. They then executed a search and seizure warrant at Mr. Barlow's residence, which was 4000 28th Avenue, Apartment 303, in the same building where Ms. Hall's body had been found just across the hall. Police recovered several items of evidence when they executed that search warrant including a pair of Nike shoes, one of which was missing a shoelace.
>
> Police submitted DNA evidence for analysis. Jessica Charak (phonetic), then of the Prince George's County Police DNA Lab, analyzed various pieces of evidence. She ultimately reached the conclusion that DNA recovered from underneath Ms. Hall's fingernails was consistent with the DNA of the defendant Mr. Barlow. Additionally, police submitted the shoestring that was used to bind Ms. Hall's

> hands behind her back as well as the shoestring from the remaining tennis shoe that was recovered from Mr. Barlow's apartment. Ms. Lenora Bender of the ATF would have testified that those two shoestrings were consistent and had come from the same pair of shoes.

ECF No. 9-10 at 27-30.

The trial court accepted Barlow's plea and, pursuant to the plea agreement, sentenced Barlow to life imprisonment with all but forty-five years suspended and five years of probation upon release. *Id.* at 35-36. On September 7, 2017, Barlow applied for leave to appeal the conviction to the Appellate Court of Maryland, which was denied. ECF No. 9-1 at 219-226, 245-246.

**B. State Postconviction Petition**

Barlow next filed a pro se petition for postconviction relief on April 5, 2018. ECF No. 9-1 at 256-270. At his hearing on the petition, he confirmed that he was challenging: (1) the voluntariness of his plea because he was not advised that the Governor would have to approve his parole or that a violation of parole could result in a life sentence; (2) the court-created a "conflict of interest" in permitting trial counsel's supervisor, Allen Wolf, to replace trial counsel; (3) trial court's abuse of discretion in advising Barlow that he risked a life sentence if he went to trial because the advisement was tantamount to urging that Barlow plead guilty; and (4) the trial court's failure to advise Barlow of the juror unanimity requirement. ECF No. 9-12 at 19-26.

On July 15, 2022, the trial court denied the postconviction petition by written decision. ECF No. 9-2 at 80-98. Barlow applied for leave to appeal that decision which the Appellate Court of Maryland denied on July 21, 2023. *Id.* at 173-185, 210-211.

**C. Barlow's Letters to the Trial Court**

While the postconviction petition was pending, Barlow repeatedly wrote to the trial court asking to for new DNA testing. *See* ECF No. 9-1 at 391-393, 394-398, 405-410, 411-416, 417-

511; ECF No. 9-2 at 16-19, 20-21, 32-33, 34-41, 42-51, 61-63, 64-67, 68-74, 68-74, 75-78, 99-103, 104-106, 107-115, 116-124, 129-162. Barlow specifically argued the state's DNA evidence was based on "junk science" which entitled him to a new DNA test. The trial court, in a written decision issued on June 14, 2023, construed Barlow's letters as a request for postconviction DNA testing pursuant to Md. Code Ann., Crim. Proc. § 8-201, and denied relief. ECF No. 9-2 at 188-196. Barlow did not appeal this decision. *See* Md. Code Ann., Crim. Proc. § 8-201(k)(6).

### D. Federal Habeas Petition

Thereafter, on November 2, 2023, Barlow filed his Petition in this Court in which he contends that trial counsel rendered constitutionally ineffective assistance because counsel failed to adequately investigate DNA evidence, which caused Barlow to enter an "unknowing" guilty plea. ECF No. 1 at 2-3. Respondent argues that the claim is unexhausted, procedurally defaulted, and does not qualify for any of the exceptions to procedural default. ECF No. 9. Barlow, for his part, asserts that the Court should excuse his procedural default under *Martinez v. Ryan*, 566 U.S. 1 (2012) and because he is actually innocent. ECF No. 1-1 at 8-9; ECF No. 14 at 3. For the following reasons, the claim is procedurally defaulted and neither equitable exception applies.

## II. Analysis

Procedural default occurs when the petitioner fails to present the claim to the highest state court with jurisdiction to hear it, and the state courts would now find that the petitioner cannot assert that claim. *Mickens v. Taylor*, 240 F.3d 348, 356 (4th Cir. 2001); *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998). Failure to exhaust such available state remedies necessary "to meet the exhaustion requirement" renders the claims procedurally barred. *Breard*, 134 F.3d at 619 (quoting *Coleman v. Thompson*, 501 U.S. 722, 735, (1991)).

For a person convicted of a criminal offense in Maryland, exhaustion may be accomplished either on direct appeal or in postconviction proceedings. To exhaust a claim on direct appeal in non-capital cases, a defendant must appeal first to the Appellate Court of Maryland and next petition the Supreme Court of Maryland for certiorari. *See* Md. Code Ann., Cts. & Jud. Proc. §§ 12-201, 12-301. To exhaust a claim through postconviction proceedings, a defendant must assert the claim in a petition filed in the Circuit Court in which the inmate was convicted within 10 years of the date of sentencing. *See* Md. Code Ann., Crim. Proc. §§ 7-101–7-103. If petitioner is dissatisfied with the postconviction decision, he must next apply to the Appellate Court of Maryland for leave to appeal the adverse decision. *Id.* § 7-109. If the Appellate Court of Maryland denies the application, there is no further review available, and the claim is exhausted. Md. Code Ann., Cts. & Jud. Proc. § 12-202.

Respondent rightly contends that the claim is procedurally defaulted because Barlow never advanced this ineffectiveness argument in state court. ECF No. 9 at 33-38. "[A] state prisoner [is required] to present the state courts with the same claim he urges upon the federal courts." *Picard v. Connor*, 404 U.S. 270, 276 (1971). This is so the state courts have a "fair opportunity" to apply controlling legal principles to the facts bearing on the constitutional claims. *Anderson v. Harless*, 459 U.S. 4, 6 (1982). Barlow failed in this respect.

In his application for leave to appeal the guilty plea, Barlow argued solely a defect in service of process. ECF No. 9-1 at 219-226. And he never raised this claim in his postconviction petition. ECF No. 9-1 at 256-270; ECF No. 9-12 at 19-26. Even in the many letters to the trial court concerning the reliability of the DNA evidence at trial, Barlow never contended that his counsel had rendered ineffective assistance by failing to challenge the competency of the laboratory or request new DNA testing. *See* ECF No. 9-1 at 391-393, 394-398, 405-410, 411-416,

417-511; ECF No. 9-2 at 16-19, 20-21, 32-33, 34-41, 42-51, 61-63, 64-67, 68-74, 68-74, 75-78, 99-103, 104-106, 107-115, 116-124, 129-162. Barlow also failed to properly assert this claim in his postconviction petition. Thus, the claim is procedurally defaulted.

In response, Barlow presses that under *Martinez v. Ryan*, 566 U.S. 1 (2012), his failure to raise the claim before should be excused. The *Martinez* exception applies when: (1) the petitioner presents a "substantial" ineffective assistance claim; (2) the default occurred because petitioner had no counsel or only ineffective counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the initial review of the ineffective-assistance claim; and (4) state law requires that an ineffective assistance claim be raised in an initial-review collateral proceeding. *Id.* at 13-14. *See also Fowler v. Joyner*, 753 F.3d 446, 461 (4th Cir. 2014) (internal quotation marks omitted) (quoting *Trevino v. Thaler*, 569 U.S. 413, 423 (2013)). If the petitioner makes this showing, then the court may consider the merits of the otherwise procedurally defaulted claim. *Martinez*, 566 U.S. at 17.

Respondent presses that Barlow fails to make a sufficient showing on the first and second *Martinez* requirements. ECF No. 9 at 41. Because Barlow fails to demonstrate his ineffectiveness claim is "substantial," the analysis ends there.

To advance an ineffective assistance of counsel claim, Barlow must show that: "(1) his counsel's performance was deficient and (2) such deficient performance prejudiced his defense." *Witherspoon v. Stonebreaker*, 30 F.4th 381, 393 (4th Cir. 2022). In assessing deficient performance, [the court] must consider prevailing professional norms and potential strategic reasons for counsel's actions, and [] review is "highly deferential." *Id.* As to prejudice, Barlow must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* (quoting *Strickland v. Washington*, 466 U.S.

668, 694 (1984)). *See also Juniper v. Davis*, No. 16-2, 2023 WL 3050984, at *3 (4th Cir. Apr. 24, 2023). Because Barlow challenges counsel's performance in connection with his guilty plea, he must demonstrate "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). The inquiry is an objective one, conducted "without regard for the 'idiosyncrasies of the particular decisionmaker.'" *Id.* at 60 (quoting *Strickland*, 466 U.S. at 695). Thus, Barlow "must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla v. Kentucky*, 559 U.S. 356 (2010).

Here, Barlow argues that he would not have pleaded guilty if his counsel had properly investigated the deficiencies in the DNA laboratory as articulated in a subsequent Washington Post article. This argument does not wash, because the Post article did not address the analyst who performed the testing or otherwise implicate the reliability of the testing in his case. ECF No. 1-2; ECF No. 9-5 at 143-192. Thus, this article alone could not reasonably have prompted Barlow to reject the plea. This is especially so when considering that the scores of letters in which he demanded a DNA retest never articulated any defects in the process regarding *this case*. ECF No. 5 at 167-172. Barlow also acknowledged at his guilty plea colloquy that his new counsel had secured a defense expert to review the DNA testing, and that the expert had no challenge to the results. ECF No. 9-10 at 19.

Nor could Barlow rationally have turned a blind eye to the substantial weight of the evidence that cut against rejecting the plea offer, to include: (1) the text message Barlow sent to Hall arranging that she meet him at the address where her body was found; (2) several witnesses who identified the necklace that Barlow had pawned as the same necklace that Hall had been wearing shortly before the murder; (3) scratches on Barlow's left forearm and abrasions on his

knuckles at the time he was questioned by police; and (4) the pair of tennis shoes found in Barlow's apartment with one shoe missing its shoelace, combined with forensic testing that demonstrated the shoelace used to bind Hall matched the lace in the other shoe. ECF No. 9-4 at 25, 85, 112, 135-37, 163-64, 166-67, 181, 184-86, 223-32; ECF No. 9-5 at 68-77. Accordingly, after escaping a life without parole sentence, a rejection of a 45-year plea offer based on the Washington Post article would have been irrational. Barlow thus failed to demonstrate that his ineffectiveness claim is "substantial," and so he cannot meet the *Martinez* showing necessary to excuse procedural default.

Barlow alternatively argues that the Court should excuse procedural default because he is actually innocent. True, "a credible showing of actual innocence may allow a prisoner to pursue his constitutional claims . . . on the merits notwithstanding the existence of a procedural bar to relief." *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013). "[The] fundamental miscarriage of justice exception is grounded in the equitable discretion of habeas courts to see that federal constitutional errors do not result in the incarceration of innocent persons." *Id*. (internal citation and quotation marks omitted). Where a petitioner makes this exceptional showing, then this Court may find such procedural default does not bar adjudication on the merits. *House v. Bell*, 547 U.S. 518, 522 (2006), citing *Schlup v. Delo*, 513 U.S. 298, 319–322 (1995).

To establish actual innocence as a gateway to defaulted claims, the petitioner must show that "in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *House*, 547 U.S. at 536–37, quoting *Schlup*, 513 U.S. at 327. "To be credible, . . . a claim [of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented

at trial." *Schlup*, 513 U.S. at 324. "If new evidence so requires, this [review] may include consideration of the credibility of the witnesses presented at trial." *House*, 547 U.S. at 538–39 (citation omitted).

The Supreme Court "caution[ed], however, that tenable actual-innocence gateway pleas are rare: 'A petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror acting reasonably would have voted to find him guilty beyond a reasonable doubt.'" *McQuiggin*, 569 U.S. at 386 (brackets omitted) (quoting *Schlup*, 513 U.S. at 329). The "standard is demanding and permits review only in the extraordinary case." *House*, 547 U.S. at 538 (citation omitted); *see also Wilson v. Greene*, 155 F.3d 396, 404 (4th Cir. 1998) ("Claims of actual innocence . . . presented . . . as gateways to excuse a procedural default . . . should not be granted casually.").

Barlow cannot clear this high bar. For one, Barlow agreed that the State could prove sufficient facts to demonstrate his guilt beyond a reasonable doubt. Second, nothing in the Post undermines the validity of the DNA results used to convict him. Third, Barlow does not give this Court any other evidence that would compel a not guilty finding. Thus, Barlow cannot demonstrate actual innocence warranting adjudication of the Petition on its merits.

For these reasons, his claim is procedurally defaulted and his Petition is dismissed.

## III. Certificate of Appealability

A petitioner may not appeal the dismissal or denial of a federal habeas petition without first receiving a certificate of appealability. 28 U.S.C. § 2253(c)(1). The Court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a petition is denied on procedural grounds, the petitioner may meet the standard by showing that reasonable jurists "would find it debatable

whether the petition states a valid claim of the denial of a constitutional right" and "whether the district court was correct in its procedural ruling." *Id.*

Barlow has not made the requisite showing. The Court therefore declines to issue a Certificate of Appealability. Barlow may still request that the United States Court of Appeals for the Fourth Circuit issue such a certificate. *See Lyons v. Lee*, 316 F.3d 528, 532 (4th Cir. 2003) (considering whether to grant a certificate of appealability after the district court declined to issue one).

**IV. Conclusion**

For the foregoing reasons, Barlow's petition for a writ of habeas corpus is denied as procedurally defaulted. A certificate of appealability shall not issue. A separate order follows.

10/8/26
Date

/s/
Paula Xinis
United States District Judge